## Case No. 8,272.

### LE ROY v. REEVES.

[5 Sawy. 102.][1]

Circuit Court, D. California. March 4, 1878.

VOID TAX DEED—TAX SALE TO PARTY IN POSSESSION INEFFECTUAL—STATUTE OF LIMITATIONS—DISABILITY.

1. A tax deed of a sheriff made in pursuance of a sale under a judgment for taxes reciting a sale of real property to the highest bidder, where the statute only authorized a sale of the smallest portion of the property which any one would take and pay the judgment and costs, is void upon its face.

[Cited in Mora v. Munez, 10 Fed. 637.]

2. Where a party is in possession of and claiming title at the time when a tax levy is perfected, and the tax becomes delinquent, and when judgment for the tax is rendered, it is his duty to pay the tax. He cannot under such circumstances acquire an outstanding title by neglecting to pay the tax or judgment, and purchasing at the sale for taxes under the judgment.

3. Where a right of action to recover land accrues during the minority of the owner, the statute of limitations of California does not begin to run against the action till the owner attains majority.

4. In such case the owner upon attaining majority may convey the land, and the grantee may maintain an action against the disseisor entering during the minority of the owner, at any time within five years after the disability terminates.

This is an action to recover possession of the east half of lot seven, in the block bounded by L and M and Fourth and Fifth streets, in the city of Sacramento. On April 23, 1862, Mary A. Wallace acquired the title to the locus in quo, through sundry mesne conveyances from John A. Sutter, the original grantee, under a Mexican grant. Said Mary A. Wallace was born on May 2, 1857. She consequently attained her majority in May, 1875—eighteen being the age of majority in California for females. On May 6, 1876, she conveyed to the plaintiff, [Theodore] Le Roy. On December 23, 1864, the people of the state of California recovered a judgment for the sum of seventeen dollars and twenty-nine cents taxes for the year 1863, and twenty dollars and twenty-six cents costs against Mary A. Wallace, the premises in question, eight lots in block between X, Y, Twenty-First and Twenty-Second streets, and eight lots in block between G, H, Twenty-Eighth and Twenty-Ninth streets. The lots are wholly disconnected, and lie in different parts of the city. The judgment-roll does not show whether the assessments and taxes were levied separately, or as a single tax upon the whole as one lot. The allegations of the complaint and the judgment are for a single sum in solido. A certified copy of the judgment and order of sale having been issued to the sheriff, he sold thereunder the whole of said premises

in a body to Eli Mayo for forty-eight dollars and fifteen cents, on February 6, 1865. On August 7, 1865, there having been no redemption from the sale, the sheriff executed and delivered to Mayo, the purchaser, a deed of the entire premises so sold, in which deed he states the sale to Mayo for forty-eight dollars and fifteen cents, and recites therein, "he being the highest bidder, and that being the largest sum bid for said property at such sale;" and nowhere stating any offer to sell any less amount than the whole. The deed is in the form of that adjudged void by the United States supreme court in French v. Edwards, 13 Wall. [80 U. S.] 506. On August 25, 1865, the purchaser, Mayo, procured from the court a writ of assistance under said judgment and sale, and by authority of said writ of assistance, on the next day, August 26, he was put in possession of the premises now in question by the sheriff of the county. On August 6, 1866, the people recovered another judgment against the premises now in question and John Doe and Richard Roe, being fictitious names, for the sum of twelve dollars and five cents taxes for the year 1865, and nineteen dollars and ninety-three cents costs. Upon a certified copy of this judgment and order of sale, the sheriff again sold the premises in question to said Eli Mayo for forty-three dollars and two cents; and there having been no redemption, the sheriff executed a deed to said Mayo in pursuance of the sale, on March 25, 1867, in which it is recited that he sold the premises "for the sum of forty-three dollars and two cents, that being the amount of said judgment and costs, and the best bid therefor;" and said land so sold being the smallest quantity that any purchaser offered to take and pay said judgment and costs. He does not, however, say that he offered to sell to the party who would take the smallest part of the land, or any part less than the whole. Said Mayo conveyed to the defendant [John H.] Reeves, on December 17, 1875. The defendant Reeves claims title under those tax sales. He also sets up the statute of limitations, claiming that he and his grantor, Mayo, have been in possession, claiming adversely, under those deeds for a period of more than five years prior to the commencement of his action.

P. Dunlop, for plaintiff.

L. D. Latimer and A. C. Freeman, for defendant.

SAWYER, Circuit Judge. The first tax sale and the sheriff's deed in pursuance thereof require no discussion; for it is already authoritatively settled by the supreme court of the United States in French v. Edwards, that they are void upon the face of the deed. 13 Wall. [80 U. S.] 506. The sale and deed in that case arose in the same

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

county under the same statute, and the deed was in form precisely similar to the one in question. In that case, also, the premises consisted of one continuous tract of land. In this the lots were in three different disconnected blocks, lying remote from each other in different parts of the city. The tax seems to have been levied in solido. At all events such was the judgment, and the sale appears to have been of the whole in solido as one lot. It may well be doubted whether a valid judgment could be rendered in this form charging the tax properly levied upon one lot, as a lien upon another distant and distinct lot, and enforcing it by a proceeding in rem against the latter. There was no personal service of process, so as to authorize a personal judgment against the owner; and the tax was not assessed against the owner by name. But, however this may be, the deed is void on the grounds fully stated in the case cited. It is insisted by the defendant's counsel, that the point upon the invalidity of the deed on its face cannot be insisted on, because no objection was made to the introduction of the deed in evidence. But the deed being in evidence the question arises as to its effect. The deed is a fact in the case; but it appears upon its face to be void. Hence it passes nothing to the defendant or his grantor. It might as well be claimed that a piece of blank paper put in evidence passed the title, because no objection was made to its introduction. There is nothing in this point.

Conceding for the purposes of this case, that the second tax levy, judgment, sale, and deed, are regular in form upon their face, another question arises. Immediately upon obtaining his first tax deed, Mayo obtained from the court in the case a writ of assistance, and under that writ he was put in possession under his deed. He took possession, and thenceforth continued in possession claiming title under this deed. He was in possession before the tax duplicates for that year were perfected, at the time when the suit for the taxes was commenced and the judgment obtained, and when the tax sale took place. The tax, it is true, was in form against unknown owners; and the suit and judgment against fictitious persons and the land, and not against either him, or the real owner by name. But he was enjoying the possession obtained by a writ of assistance under a judicial proceeding against the owner claiming title under his said tax deed, which took effect by relation from the date of the sale, February 6, 1865, before the lien for taxes of that year attached; and the tax under which the second sale was made, if valid at all, was as valid against his interest as against the real owner, to whose rights he claimed to have succeeded; and it was his duty to pay the taxes of that year. It is settled in this state, that a party occupying such a relation to the land cannot omit to pay the taxes

duly levied upon it, allow it to go to a sale and purchase in either himself or through another an outstanding title. Such a proceeding is but an indirect mode of paying the taxes, which it is his duty to pay himself, without suit, and the law will not tolerate his acquisition of the title of another in this mode through his own wrong. Barrett v. Amerein, 36 Cal. 326; Coppinger v. Rice, 33 Cal. 424, 425; Bernal v. Lynch, 36 Cal. 146; Reily v. Lancaster, 39 Cal. 356; Moss v. Shear, 25 Cal. 45.

The next question arises under the statute of limitations. Under section 328 of the Code of Civil Procedure: "If a person entitled to commence an action for the recovery of real property * * * be at the time such title first descends, or accrues * * * within the age of majority, * * * the time during which such disability continues is not deemed any portion of the time in this chapter limited for the commencement of such action." And this has always been, substantially, the statute, with only changes in the form of expression. At the time of the entry of defendant's grantor, and of the accruing of the action, Mary A. Wallace was an infant just entering upon the ninth year of her age. She did not attain her majority until May, 1875. The complaint was filed May 15, 1876—a few days more than a year after the disability ceased. The defendant while admitting that the action would not have been barred had the title remained in Mary A. Wallace, and the action been brought by her, insists that this disability is a personal privilege which was only available to herself in person, and that her grantee is not protected. I can perceive no principle upon which such a proposition can be sustained. The bar of the statute is a creature of the statute, and is just such, and no other, as the statute makes it. An adverse possession for the period prescribed vests a title in the possessor. Arrington v. Liscom, and cases there cited, 34 Cal. 365. But until the adverse possession has continued for the full period prescribed, the title of the owner is in no way affected. It is as perfect up to the last day as on the first. Under the statute in question the time did not begin to run until Mary A. Wallace attained her majority. She had the absolute dominion of the property—a perfect title—in no way impaired or affected by the statute of limitations at the time she conveyed to plaintiff; and plaintiff took a clear title. Any other construction would materially affect the rights of Mary A. Wallace—in reality confiscate her property; for the defendant at that time had been in possession more than five years; and if she could not sell the land and convey a title, she would be deprived of the benefit of one of the most important elements of property—the jus disponendi—often the only quality which renders it available, or of any really practicable value. Her title to the land was perfect, and what-

ever title she had, she could, and did, convey to the plaintiff. He took the land subject only to such rights as the defendant had acquired by virtue of an adverse possession from the time Mary A. Wallace attained her majority. If any authority is needed for so plain a proposition it will be found in the cases of Ford v. Langel, 4 Ohio St. 466, and Huls v. Buntin, 47 Ill. 401. There must be a finding and judgment for plaintiff, and it is so ordered.