## MORA *v.* NUNEZ and others.

*(Circuit Court, D. California.* February 20, 1882.)

1. VOID SALE UNDER JUDGMENT FOR TAXES.

A sale of lands to the highest bidder under an execution issued upon a personal judgment for taxes, recovered under the statute of California of May 17, 1861, (St. 1861, p. 471,) requiring the sale of the "smallest quantity that any one will take and pay the judgment," and the tax deed issued upon such sale, are void.

2. MEXICAN GRANT PATENT.

A patent issued upon the confirmation of a Mexican grant under the act of congress of 1851, to ascertain and settle land titles in California in an action at law, is conclusive evidence, as against one having no patent, not only of the validity of the grant, but of the correct location of the claim confirmed, so as to embrace the lands as described in the patent.

3. PATENTS—DECREES OF CONFIRMATION—CONFLICT OF.

A claim to certain small tracts of land, church buildings situate thereon, and appurtenances, was confirmed under the act of 1851; in due form surveyed and located under the act of 1860; and patented as so located to Joseph S. Alemany, bishop of Monterey. Another grant, of much larger dimensions, was confirmed to Eulogio de Celis, the boundaries described in the decree of confirmation, including the said lands so patented to Bishop Alemany, without any exception of said lands in said decree. The certified survey and plat of said grant subsequently approved by the order or decree of the district court, and the patent issued thereon, in express terms reserved and excepted the lands before patented to Bishop Alemany, thereby excluding them from the operation of the patent issued to De Celis. *Held,* that whether the said survey and patent rightfully or wrongfully excluded said lands, the patent was conclusive as to the title in an action at law, and the patent including the lands must prevail over the patent excluding them, and the decree of confirmation upon which it issued.

*J. T. Doyle,* for plaintiff.

*E. J. Pringle* and *B. S. Brooks,* for defendants.

SAWYER, C. J.   This is an action to recover the lands known as the Mission Rancho of San Fernando, situate in Los Angeles county. The plaintiff, in his complaint, seeks to recover the entire rancho, containing upwards of 121,000 acres. But the defendant, by supplemental answer, alleges that the plaintiff, subsequent to the commencement of the action, parted with his title to a large portion of the rancho, the title to which has become vested in the defendant; and the proofs are admitted to be sufficient to sustain the supplemental answer as to the lands described in it. The contest is, therefore, now limited to certain small parcels of land, containing in the aggregate about 76 acres, embracing the church and appendages and lands claimed to belong thereto, covered by a patent issued to Arch-

bishop Alemany.   The title to these parcels rests, firstly, upon an execution sale; and, secondly, upon a patent to Archbishop Alemany.

In June, 1861, the district attorney of San Joaquin county brought an action in the fifth judicial district in said county of San Joaquin against Andreas Pico, a resident of Los Angeles county, for certain delinquent taxes levied against said Pico for two fiscal years, ending in March, 1859 and 1860, in the county of San Joaquin, upon lands known as the Moquelemos grant, situated in said county.   He prayed judgment for $2,671, with costs and charges; that the said land and improvements be decreed to be sold to satisfy the taxes and charges; and for such other and further relief as might be just and equitable.

This action is expressly stated in the complaint to be brought in pursuance of an act of the legislature of the state entitled "An act to legalize and provide for the collection of delinquent taxes in the counties of this state," approved May 17, 1861.   This act legalizes the taxes for the fiscal years ending March 1, 1859, and March 1, 1860; and in case they cannot otherwise be collected, provides for collecting them by suit in a prescribed form.   The complaint is drawn and the suit prosecuted in accordance with the provisions of the act.   The defendant Pico, having been served with the summons, appeared and demurred.   The demurrer having been overruled, in due time, on December 26, 1861, a personal judgment, in default of an answer, was rendered against Pico for $3,339.55 and costs.   There was no decree for a sale of the lands upon which the taxes were levied, and upon which they were a lien. No transcript of this judgment was ever filed in Los Angeles county, nor was there any record of a lien of any kind made in that county.   On April 29, 1862, an execution in the ordinary form, upon a personal money judgment at law, issued to the sheriff of Los Angeles county, commanding him to satisfy the execution out of the personal property, if sufficient could be found; and if sufficient could not be found, then out of the real property " belonging to him, Pico, on the day when the said judgment was docketed in *the county aforesaid*, or at any time thereafter."   There is some ambiguity as to which county, San Joaquin or Los Angeles, this clause refers.

The sheriff's return certified that " he served the said writ of execution by levying on " all the right, title, and interest of Pico in the rancho San Fernando, in Los Angeles county, but he does not state what acts he performed to constitute the levy.   The return also shows that on June 9, 1862, he did " sell the lands and premises above mentioned and described to Thadeas Amat, he *being the highest bidder* for the same, to-wit, for the sum of $2,000."   The lands described and sold embraced upwards of 121,000 acres.   The published notice of sale, annexed to the return, is that I " shall expose for sale, at public auction, for cash, to the highest bidder;" and the sheriff's deed recites that he did " sell the premises at public auction,   *   *   *   at which sale the said premises were struck off and *sold* to Thadeas Amat for the sum of $2,000, the said Thadeas Amat being *the highest bidder, and that being the highest sum bidden,* and the whole price paid for the same."

The foregoing are the facts upon which the title under the execution sale rests. The title under the patent rests upon the following facts:

Joseph Sadoc Alemany, Catholic bishop of the diocese of Monterey, on February 19, 1853, filed his petition with the commissioners to ascertain and settle land titles in California under the act of congress of 1851, in which he claimed the confirmation to him and his successors of certain church property described "to be held by him in trust for the religious purposes and uses to which the same have been respectively appropriated," said property consisting of "church edifices, houses for the use of the clergy and those employed in the services of the church, church-yards, burial grounds, gardens, orchards, and vineyards, with the necessary buildings thereon and appurtenances;" alleging that the same had been recognized as the property of said church by the laws of Mexico in force at the time of the cession of California to the United States. The occupation by the church is claimed in the petition to have commenced some time in the last century. On December 18, 1855, the board of land commissioners confirmed the claim to lands "at the mission of San Fernando," described in the decree as follows: "The church and the buildings adjoining thereto in a quadrangular form, and the house connected with the same by a yard at the south-west corner of said quadrangle, which are known as the church and mission buildings of the mission of San Fernando, situated in the county of Los Angeles, together with the land on which the same are erected, and the curtilages and appurtenances thereto belonging, and the cemetery enclosed with an adobe wall adjoining said church." This decree became final, by dismissal of the appeal, March 15, 1858.

A survey and plat were made, filed, and certified August 6, 1861, in pursuance of the act of 1860; and a patent issued to said Bishop Alemany, May 13, 1862, embracing eight parcels of land described in the plat and survey, and being the same several parcels particularly described in the third supplemental answer filed in this case. They embraced the orchards and vineyards used by the mission at a little distance from the church building. The plaintiff has such right of possession as is conferred by said patent.

On October 7, 1852, Eulogio de Celis filed his petition with the said board of land commission praying a confirmation to him of the mission of San Fernando rancho, his title being a "deed of grant" made to him on June 17, 1846, by Pio Pico, governor of California. This petition included the lands hereinbefore mentioned patented to Bishop Alemany. The claim was confirmed July 3, 1855, and the decree became final, by dismissal of the appeal, March 15, 1858. The description in the decree of confirmation is as follows: "The land of which confirmation is hereby given is called the ex-mission of San Fernando, situate in the county of Los Angeles, and to be located as the boundaries are known and recognized on the seventeenth day of June, 1846. Bounded on the north by the rancho called San Francisco, on the west by the mountains Santa Susanna, on the east by the rancho Miguel, and on the south by the Portosuelo." A survey and plat having been made and filed in 1861, and notice given and the survey returned into court under the act of 1860, afterwards, August 14, 1865, proceedings were had in the district court by which the eastern boundary line of the rancho was modified, and subsequently,

after the repeal of the act of 1860, an amended survey, in pursuance of the said decree modifying said eastern boundary, was returned into court. Upon said amended survey, with other amendments and certain reservations approved by the court, a patent was issued to the petitioner and confirmed on January 8, 1873. The title claimed under said grant and patent has become vested in the defendants. In addition to the foregoing facts, it is recited in said patent that "the district court erroneously assumed jurisdiction over said resurvey, and amended and approved the same, reserving therefrom the rancho 'El Encino,' confirmed and patented January 8, 1873, to Vincente de la Ossa and others, and the eight tracts of land known as the mission of San Fernando, confirmed and patented May 31, 1864, to Joseph S. Alemany, bishop of Monterey, and to his successors, which reservations are satisfactory to the *parties legally entitled to this patent,* as appears by their acceptance of these presents as a good and valid patent for the lands confirmed, as aforesaid," and that "the plat hereunto annexed in all respects conforms to the aforesaid decree and survey made on the fourteenth of August, 1865, by the United States district court aforesaid, except that the rancho 'El Encino,' patented January 8, 1873, and the eight tracts of land known as the mission of San Fernando, patented May 31, 1864, to Joseph S. Alemany, bishop of Monterey, and to his successors, are reserved therefrom." Then follow the other usual recitals, with the certificate of the surveyor general giving a description of the lands, at the close of which description it is said: "From which are to be deduced the areas of the following-described tracts confirmed by the United States district court to other confirmees, which tracts lie entirely within the area comprised by the boundaries described, namely: *First,* 'El Encino.' * * * Also, eight tracts of land at the mission San Fernando, confirmed to J. S. Alemany, bishop of Monterey, the boundaries of which are described as follows;" giving the boundaries as set forth in the said patent to Bishop Alemany. The patent then proceeds with the granting clause, by which the United States gives and grants "to the said Eulogio de Celis, and to his heirs, the tract of land embraced and described in the foregoing survey, *excepting and reserving therefrom* the rancho 'El Encino,' * * * and the eight tracts of land known as the mission of San Fernando, containing in the aggregate 76.94 acres, patented May 31, 1864, to Joseph S. Alemany, Bishop of Monterey, and his successors."

The first point argued by counsel is as to the validity of the sheriff's sale and deed. A sale upon a judgment rendered for unpaid taxes, recovered under the same act, made in the same manner, and the deed containing similar recitals, was held to be void by the supreme court of the United States in *French* v. *Edwards,* 13 Wall. 511. The same point was decided the same way by this court in *Le Roy* v. *Reeves,* 5 Sawy. 102, and by the supreme court of California in *Carpenter* v. *Gann,* 51 Cal. 193, and *Hewell* v. *Lane,* 53 Cal. 213. All these cases arose under the same act. It is attempted to distinguish the present case from those cited, on the ground that those cases were proceedings

*in rem* to enforce liens for taxes upon the lands taxed strictly in pursuance of the statute; while, in this case, it is claimed that the action is simply one in *assumpsit* at common law to recover a debt due, without any reference to the mode in which the liability accrued; and that the execution in the ordinary form, upon a personal money judgment, was issued to and property sold under it in another county, which property had no relation whatever to the taxes, there being no lien upon it till an actual levy of the execution. But upon looking into the judgment roll it is apparent on the record that the action is for taxes, and it expressly purports to be brought under the provisions of that act. The allegations of the complaint and all the proceedings are strictly in pursuance of the provisions of that act, and, in other respects, of the Code of Civil Procedure, which are made applicable by the terms of the act, except so far as limited by that act itself. The complaint described the lands situated in San Joaquin county upon which the taxes were assessed, and upon which they were a lien, and prayed a judgment for sale of the premises to satisfy the lien. But when we come to the judgment which was entered in default of an answer, there is, it is true, simply a personal judgment for so much money; that is to say, only a part of the relief prayed in the complaint, and to which the people were entitled under the act, was granted. Why the district attorney did not take all the relief prayed, and which the statute under which he proceeded authorized, when he had a lien upon the 11 leagues of land upon which the taxes sued for were asssessed, does not appear. It is a public historical fact, however, well known in California, that the decree of the district court confirming the Moquelemos grant was, in 1860, reversed by the United States supreme court upon principles that would necessarily result, as it finally did, in its ultimate rejection as fraudulent, (*U. S.* v. *Pico,* 22 How. 407;) and if it is admissible to indulge in conjectures, it is not improbable that the failure of title to the lands assessed rendered a decree for a sale useless, and made it necessary to look elsewhere for satisfaction of the now baseless taxes sued for assessed against Pico and the land. Be this as it may, the proceedings up to this point were in strict conformity to the act validating the taxes for those years in question, and providing a mode for their collection, and only fell short in that the judgment did not give all the relief to which the complainants were entitled.

The act authorized the relief granted in the form granted, and more. The supreme court of California necessarily regarded the action as brought under this act, and as not being otherwise authorized by law,

when it subsequently reversed the judgment for the tax, as it did on the ground that there was no averment in the complaint of an inability to otherwise collect the taxes, which averment was held to be necessary to show a cause of action. *People* v. *Pico*, 20 Cal. 595. What, then, are the provisions and limitations of that act? One of the provisions is that "judgments rendered in such cases in the district court shall be docketed and become liens upon *all property of the defendant* liable to taxation, and may be enforced against the same." St. 1861, p. 472, § 4. All property of the defendant, then, may be made liable to the personal judgment. Another provision is that the Code of Civil Procedure is "made applicable to the proceedings under this act, * * * *so far as the same is not inconsistent with the provisions of this act,*" (Id. § 5;) and "*any deed* derived from a sale of *real property* under this act shall be conclusive, etc. * * * "Provided, that the sheriff, in selling said property, *shall only sell the smallest quantity that any purchaser will take and pay the judgment and costs*. Id. § 5. There is no remedy or proceeding to enforce civil rights under our laws except the Code of Civil Procedure, and such other proceedings as are expressly provided for in some other general or special statute. This act, as is seen, therefore, authorizes the personal judgment for a tax, which may be enforced against real property other than that assessed, the Code of Civil Procedure to enforce the tax being applicable only "so far as the same is not *inconsistent* with the provision of this act." *Any* deed derived from sale of *real property under this* act "shall be conclusive," etc.: "provided, that the sheriff, in selling, *shall only sell the smallest quantity that any purchaser will take and pay the judgment and costs*." This is expressly prohibitory language, and is wholly inconsistent with the provisions of the Civil Code authorizing a sale upon executions to the highest bidder, and with any other provisions of our law authorizing a forced sale of real property to satisfy any judgment or demand. It takes away the power of the sheriff to sell in any other mode. It governs and controls the sale, and a sale in the prohibited mode is necessarily void. The sale was for a tax, merged, it is true, in the judgment. But it was that very case, and no other, that the statute was dealing with; and a sale upon an execution issued upon a judgment for the tax so merged, was the kind of sale at which the prohibition was expressly aimed. It is also true that the execution does not disclose the fact that the judgment was for a tax, but the judgment record does, and that is notice to all the world.

The fact that the execution is regular in form for a money judgment, under the Code of Civil Procedure, can no more affect the power of the sheriff to sell in the mode prohibited than an execution entirely regular, and apparently valid upon its face, issued upon a judgment absolutely void upon the face of the record. I am unable to distinguish this case from the cases cited, and must hold the sale and the sheriff's deed to be void. This view renders it unnecessary •to consider the other objections to the validity of the sale.

As to the second ground relied on for a recovery:

It appears from the facts found that the plaintiff has a patent issued upon a confirmation of a claim arising under the laws of Mexico, which includes eight small tracts of the land described in the complaint, amounting in the aggregate to a little over 76 acres; while the patent of the defendants, in express terms, reserves and excludes those tracts from the operation of their patent. To those tracts, then, the plaintiff has a patent of the United States, and the defendants have none. It is claimed by defendants that their decree of comfirmation covers these pieces of land; that they ought, therefore, to have been included in the patent, and that their exclusion was unauthorized and without effect. I .do not so understand the law, as settled in regard to such titles, as applied to actions at law to recover the possession of lands. As I understand the law as settled in a long line of decisions in the supreme court of California, and now affirmed and fully established by the decisions of the supreme court of the United States, the patent issued upon a confirmed Mexican grant is the final, authentic, and conclusive record which establishes the legal title in the patentee, which must prevail in an action at law against any party having no patent to the land; that it is conclusive and unassailable collaterally by any party having no patent. This is so held, following the California decisions, in *Beard* v. *Federey*, 3 Wall. 492, where the patent is declared to be record evidence that not only the claim is valid, but that the grant "is correctly located now so as to embrace the premises as they are surveyed and described," and that "it is in this effect of the patent as a record of the government that its security and protection chiefly lie." So, also, the principle is asserted in *Mora* v. *Foster*, 3 Sawy. 472–3, and distinctly affirmed on appeal in *Foster* v. *Mora*, 98 U. S. 427. The series of the principal California cases on the point will be found cited in *Bissell* v. *Henshaw*, 1 Sawy. 565 *et seq.* It is true that in *Beard* v. *Federey* there was no final decree of confirmation of the opposing grant. But in

*Mora* v. *Foster* there were both a decree of confirmation and a final survey and location of the adverse grants. It was in all respects, including the character of the adverse grant by Pico, confirmed, like the present case. The grant to De Celis was also like that in *Workman's Case*, 1 Wall. 745, and *Jones' Case*, Id. 766. And the claim for the mission in that case was presented by the bishop for confirmation in the same petition as was the land patented to the bishop in this case. If one patent is conclusive record evidence in an action at law of the proper location of the land, so must another be; and defendants' patent is as conclusive evidence, in such an action, that it is correctly located, so as to exclude these tracts of land, as plaintiff's patent that it is properly located so as to include them. Each patent is the last act in the series of proceedings for confirmation, and the final and conclusive record as to where the title is and as to what it covers. It is the final evidence of the matter adjudged between the United States and the claimant. If it shows no right in the patentee as against the United States, it can show none against another patentee of the United States. If there is an error in the description, or location, it must be remedied, if it can be remedied at all, elsewhere. Besides, the plaintiff's survey and location were made and became final under the act of 1860. If it was erroneous, the confirmees of defendants' grant had an opportunity under that statute of correcting it. If they did not embrace that opportunity, the failure to do so was owing to their own laches, and the implication to be derived from the decision of the United States supreme court in *Rodrigues* v. *U. S.* 1 Wall. 582, is that they are bound by the result. So, also, even had both patents covered the land, the origin of the claim confirmed to plaintiff's grantor was long prior to that confirmed to defendants. See *Henshaw* v. *Bissell*, 18 Wall. 268–9. But it is not necessary to consider what the rights of the parties would be had both patents embraced the lands. It is enough for this case that the final and conclusive record of defendants' title excludes the land, while that of plaintiff's includes it. In my judgment, the public interests and public policy demand that the principle of the conclusiveness of the patent in collateral proceedings established in the cases referred to, and followed to its logical conclusion in this case, should be rigidly adhered to. The security of titles and the public peace require that confidence should be reposed in the action and records of the judicial tribunals of the country, and in the public records and official action of other public officials acting within the

scope of the jurisdiction conferred upon them by law; and the patent, in the class of cases now in question, is the final record of the judgment of those tribunals and public officers, to whom alone has been committed the jurisdiction to ascertain and determine the matters set forth in the patent.

There must be findings and judgment for plaintiff for the several small tracts of land described in the patent to Archbishop Alemany, being the same described in defendants' third supplemental answer, and for the defendants as to the other lands included in the description contained in the complaint. And it is so ordered.