[No. 12295. In Bank.—June 24, 1890.]

ISAAC E. DAVIS ET AL., RESPONDENTS, v. CALIFORNIA POWDER-WORKS, APPELLANT.

MEXICAN GRANTS — FRAUDULENT ANTEDATING — CONFLICT OF PATENTS — QUIETING TITLE. — Where both parties to an action to quiet title claim the land in dispute under patents confirming Mexican grants, the question of the genuineness of each original grant is a legitimate subject of inquiry in the action, provided such inquiry is admissible under the pleadings; and it may be shown in such case that the grant bearing the oldest date was not made during the term of office of the Mexican governor whose signature it bears, and that it was fraudulently antedated.

ID. — ABSENCE OF ARCHIVES — PRESUMPTION AGAINST GENUINENESS OF GRANT — ORAL TESTIMONY — REVIEW OF CONFLICTING EVIDENCE. — When the evidence in such action shows that there is no official paper appertaining to an alleged Mexican grant, nor any record or trace thereof, which appears anywhere in the archives of California, when a part of Mexican territory, a strong presumption arises against the genuineness of the grant, which can only be overcome by the clearest proof of its

genuineness; and when the oral testimony of witnesses, offered in support of such genuineness, is of an inconclusive or suspicious character, a finding against the genuineness of the grant will not be disturbed upon appeal.

ID. — IMPEACHMENT OF WITNESS — DATE OF SIGNATURE TO OTHER GRANTS — TESTING RECOLLECTION — COMPARISON OF SIGNATURES. — While a witness cannot be impeached by proof of specific wrongful acts, or by contradicting him upon collateral matters, yet where the witness has shown great positiveness of recollection as to the date of his own signature to a grant in controversy, his accuracy of recollection may be tested by inquiry as to the date of his signature to other grants; and if he shows no accurate remembrance of such date, it is competent to show the real date of such other signatures, for the purpose of comparison with the signature in question, which is alleged to have been antedated.

ID. — PARTICULAR WRONGFUL ACTS — KNOWLEDGE OF COURT — PRESUMPTION AGAINST IMPEACHMENT. — When such witness is asked as to the date of his signature to particular grants, concerning which no wrongful act is proven, and no attempt is made to contradict or impeach the witness by any evidence offered in the case, it cannot be presumed that the trial court would be influenced to disbelieve the witness by its knowledge of published decisions of the United States supreme court not in evidence, tending to show that in making such grants the witness was guilty of turpitude.

ID. — CONTRADICTING WITNESS AS TO EXISTENCE OF COLLATERAL GRANT — CROSS-EXAMINATION. — When a witness is asked on his examination in chief as to whether he had received a grant, for the purpose of strengthening his testimony as to having seen and being capable of recognizing papers pertaining to the Mexican grant in controversy, it is competent to cross-examine him as to whether the grant he had received was a Mexican grant, and to contradict him by showing that no such grant appeared in the Mexican archives.

ID. — IMPEACHMENT COMMENSURATE WITH PROPER CROSS-EXAMINATION — TESTING ACCURACY OF WITNESS — REBUTTAL — DATE OF COLLATERAL GRANT. — When a cross-examination is proper as testing the accuracy of the recollection or knowledge of a witness relating to the date and genuineness of a Mexican grant in controversy, concerning which he has testified in chief, the whole evidence must be considered as that of the party calling the witness, and if the date of a collateral grant testified to on such cross-examination bears upon the accuracy of recollection or knowledge of the witness as to matters testified to in chief, it is competent to contradict him by rebutting evidence as to the date of such collateral grant.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Garber, Boalt & Bishop*, for Appellant.

*Wilson & Wilson*, and *S. M. Wilson*, for Respondents.

Foote, C.—This action was brought by the plaintiffs, Davis and Cowell, the first of whom is now dead, and the cause revived in the name of his administrator, against the defendant, the California Powder-works, with the object in view to quiet title to a certain tract of land lying on the east side of the San Lorenzo River, in Santa Cruz County. The plaintiffs had judgment as prayed for; from that no appeal is prosecuted, but the one in hand is taken from an order denying the defendant a new trial.

Both parties claim under patents issued by the government of the United States upon confirmed Mexican grants. The patent under which the defendant claims was issued after the commencement of the action, and was pleaded by supplemental answer. The plaintiffs claim title under their patent, and also by estoppel and adverse possession for the statutory length of time. The court below found for the plaintiffs upon the issues presented for decision, and judgment was thereupon entered on the findings.

From the view which we take of the case, as presented in a most voluminous transcript, and as argued at great length and with great ability by counsel on both sides, it seems only necessary to determine whether the trial court was justified by the evidence presented in finding that the grant purporting to have been made by Juan B. Alvarado, the governor of California, then a part of the Mexican republic, and to one William Bocle, was never in fact made, as its face imports, during the term of such governor as a Mexican official, but was made long after his functions as such official had ceased; in other words, that the pretended grant to William Bocle on the third day of February, 1838, under which the defendant claims, was not made at that time, but in the year 1848,

after California had ceased to be under Mexican authority, and had become a part of the territory of the United States of America.

Second, whether the evidence in support of such findings was, any of it, improperly admitted by the trial court. The grant to Bocle, if made as its date imports, was earlier in date than that of Sainsevain, under which the plaintiffs claim. And the land in dispute is included in both patents.

If the evidence sustains the court in its view that the Bocle grant was not made by Alvarado on the 3d of February, 1838, but was made by him in 1848, after his functions as a Mexican official had ceased, then of course the Bocle grant was fraudulently antedated, and a patent based upon it should never have been granted by the authorities of the United States.

Both sides to this controversy concede that they are, as to the patents adverse to their interests, " third parties," within the meaning of that language as used in section 15 of the act of Congress of March 3, 1851 (*Rodriguez* v. *United States,* 1 Wall. 588), and that the question of the genuineness of each original grant from the Mexican officials is a legitimate subject of inquiry in this action, provided such inquiry is admissible under the pleadings; the counsel for the plaintiffs claiming that this inquiry is under the pleadings admissible as to the Bocle grant, but not as to the Sainsevain grant, and counsel for the defendant claiming that both grants are under the pleadings equally subject to be attacked as not being sufficient to carry the land in controversy.

We entertain no doubt but that the grant made to Sainsevain, and under which the plaintiffs claim, is valid and genuine, and that the patent to the same issued by the United States government includes the land in dispute.

The evidence as to the Bocle grant, under which the defendant claims, is, in the main, to the effect that

there is no official paper appertaining to this grant which appears anywhere in the archives of California, when a part of Mexican territory; that there is no trace of any petition, map, or any other of the necessary title papers for such a grant to be found anywhere in those archives; that, so far as the paper title or any record of it is concerned, it depends solely upon a petition prepared by Bocle, in 1838, to Bolcoff, the alcalde of the town of Branciforte, where Bocle then lived, for such a grant as that official could make, itself of no value as a muniment of title, and a petition to Alvarado, as the governor of California, to grant the land in dispute, that petition having a marginal writing by Alvarado granting the land as asked. for. But no record appears ever to have been made of these papers until the year 1848, when they were recorded in an alcalde book at Santa Cruz, after California had ceased to be Mexican territory.

This grant is striven to be upheld by parol testimony going to show that the petition was written by a then youth named Joaquin Escamillo, the marginal grant by Alvarado himself, each of whom swears that they wrote what defendant claims they wrote, and that it was done at the time which the paper expresses, viz., the 3d of February, 1838. The question then is, whether the evidence of Alvarado and Escamillo, supplemented as it is by certain other witnesses, to the effect that they saw this petition and grant in the hands of Bocle some years before 1848, is uncontradicted in any way so that the court below had no legal right to disregard it.

If it be true that, as a legal proposition, the trial court was authorized to disbelieve Alvarado and Escamillo, and to believe that the grant was not made, as they declare, in 1838, but was made in 1848, then the finding that the grant was a fraud, and antedated to deceive the United States authorities, is to be sustained. The force to be attached to evidence of this kind, that, in the case

of an alleged grant, where the Mexican archives for California show no existence of any of the papers on which the grant is based, and parol evidence is introduced to prove the genuineness of a grant which has always been in the possession of the grantee without any record of it until the time has passed when the Mexican officials had any power to make a grant, has been frequently discussed, and rules applied by the supreme court of the United States for the guidance of its courts in their action determining the validity of such grants.

The authority of a Mexican official, such as Alvarado claimed to be, in making grants of land such as here involved, was derived from the colonization act of Mexico of 1824, and the regulations made thereunder in 1828. They are to be found in Rockwell's Spanish and Mexican Law, 452, 453; Wheeler's Land Titles, 7, 8.

" They are, and were also considered to be, directions to petitioners for land before they could get titles. Where, as here, the petition and the other requirements following it have not been registered in the proper office with the grant itself, *a presumption arises against its genuineness*, making it a proper subject of inquiry before that fact can be admitted. It is not to be taken as a matter of course, *nor should slight testimony be allowed to remove the presumption*. Both the kind and *quantum* of evidence must be regarded." (*Fuentes* v. *United States*, 22 How. 454.)

" The governor could not dispense with them with official propriety; nor shall it be presumed that he has done so because there may be, in a paper said to be a grant, a declaration that they had been observed, particularly in a case where the archives do not show any record of such a grant." (*Fuentes* v. *United States*, 22 How. 453.)

" The Mexicans of the Spanish race, like their progenitors, were a formal people, and their officials were usually formal and careful in the administration of

their public affairs." (*White* v. *United States*, 1 Wall. 680.)

And where it was attempted to be shown that the book which might probably have contained a grant, had it existed, was lost, the supreme appellate tribunal said: —

"Evidence was also introduced by the claimant tending to prove that a book of records appertaining to land titles in California for the year 1846 was lost; but no attempt was made to show that the grant in question was ever recorded in that book. All we think it necessary to say upon that subject at the present time is, that proof of such a loss cannot avail a party in a case like the present, unless it also be shown, at least by circumstances which will justify the court in finding the fact, that the grant was duly and properly entered in the lost record." (*United States* v. *Knight's Adm'r*, 1 Black, 252.)

But it could hardly be true, from the evidence of Alvarado in this case, that any of the steps necessary to have a record made of the grant were taken; for, as he says, the whole affair occupied but about twenty minutes, when he had no organized official staff, and was just about to set out on a military expedition against his rival, his uncle Carrillo, and that he made no record or memorandum of the grant, and no report of it to the departmental assembly, as it was his official duty to do, and had no organized office or secretary at that time.

The transaction of the presentation of this petition by an obscure Englishman, as Bocle was, to Alvarado, the then political and military chieftain, and his writing the grant on its margin, as related by that gentleman, causes us to be reminded much of a hasty dispatch or order written by a general just on the eve of a march to a battle,—an affair apparently so trivial that he did not report it to the departmental assembly, or appear to take any steps at all to perpetuate it as an official act.

In speaking as to the memory of those like Alvarado,

former officials of the Mexican government, it is said, in *Luco* v. *United States*, 23 How. 543: "Owing to the weakness of memory with regard to the dates of grants signed by them, the testimony of the late officers of that government cannot be received to supply or contradict the public records, or establish a title of which there is no trace to be found in the public archives."

In addition to these elements casting suspicion and doubt upon the validity of Bocle's grant, it appears, by the evidence of Alvarado, that, to his knowledge, there never was any paper in existence which had any connection with such grant other than the one adverted to. It stands, therefore, based upon the petition and marginal indorsement alone,—a paper which never left the possession of the grantee during Mexican ownership of California, and never was recorded at all in any way, so that it could be inspected by those desiring to do so until 1848, when Mexican authority had ceased to exist.

Thus condemned as evidence entitled to weight by the highest tribunal in the land, it is supplemented before the trial court by the evidence of persons,—assuming that they ever saw such a paper,—who had not seen it for about forty years, until shortly before the trial of the cause. Yet Alvarado could remember and swear most pertinaciously and positively, as a matter about which there could be no mistake, that he made the marginal grant on the day it purports to have been written, and that, without ever having seen the paper shown him for about thirty years, he could, *ten* years before his examination, have told one asking him the *date* of it.

Nevertheless, this same witness, when questioned as to the most stirring and remarkable events of his life, as a soldier and politician, could remember no date as to when any of them occurred. He seemed to remember nothing except that the date of the Bocle grant was the 3d of February, 1838.

Said Mr. Justice Field, in *Pico* v. *United States*, 2 Wall.

282: "When, therefore, a claim to land in California is asserted under an alleged grant from the Mexican government, reference must, in the first instance, be had to the archives of the country embracing the period when the grant purports to have been made. If they furnish no information on the subject, a strong presumption naturally arises against the validity of the instrument produced, which can only be overcome, if at all, by the clearest proof of its genuineness, accompanied by open and continued possession of the premises."

Again, it is said, in *United States* v. *Teschmaker*, 22 How. 406: "At least, satisfactory evidence should be required, under the circumstances in which most of these Mexican grants were made, as to make the antedating of any given grant irreconcilable with the proof; otherwise, there can be no protection against imposition and fraud in these cases."

With reference to the tests of the truth of parol testimony of witnesses such as are relied on here to supply the want of record evidence, the same distinguished court says:—

"There are many more satisfactory tests of the truth of parol testimony than that of character of the witnesses. Where the facts sworn to are capable of contradiction, they may be proved by others not to be true, and when they are not, the internal evidence is often more convincing than any other. A shrewd witness, who is swearing falsely to something which cannot be disproved by direct testimony, will confine his recollection wholly to that single fact, professing a want of recollection of all the facts and circumstances attending it. An inexperienced witness, whose willingness to oblige his friend exceeds his judgment, will endeavor to give verisimilitude to his tale by a recital of imaginary circumstances. A stringent cross-examination will generally involve the latter in a web of contradictions, which will be in a measure evaded by the other, with the answer that he

'*does not recollect.*'" (*Luco* v. *United States*, 23 How. 535, 536.)

The insignificant marginal order, or grant, where there are no papers, except a petition on which such order is written, made at a time when Alvarado was doubtless absorbed in reflection over one of the most daring and dangerous acts of his eventful life, his expedition against Carrillo, his rival, and made, too, for a small and almost valueless piece of land, to a man in no way prominent or related to him, in whose behalf there appears no reason for such informal action, is remembered by Alvarado after many years, during which time he has never seen the grant, or had his interest or attention attracted to it in any way, with so much particularity that he cannot be *mistaken*, he says, as to its date, when to all other inquiries as to the date of the most eventful occurrences of his somewhat remarkable career, he answers he "does not recollect."

The evidence of Escamillo is also far from convincing that he wrote the grant in 1838.

We think the trial court cannot be said to have made findings unsupported by evidence upon the question as to the antedating of this grant, and its fraudulent effect upon the board of land commissioners, and the procurement of the dismissal of the appeal therefrom to the United States district court. It then becomes necessary to determine whether or not any evidence was allowed to be introduced erroneously which tends to support such findings.

There are a large number of exceptions taken to the introduction of evidence on cross-examination, upon which it is claimed the findings in question are necessarily, in part at least, based. The main grounds upon which it is urged that the action of the trial court in the premises was without legal sanction are, that some of the evidence thus introduced was as to collateral facts, and was intended and in the direction of the impeach-

ment of certain witnesses introduced by the defendant, and that some of it was as to particular wrongful acts committed by Alvarado in making other grants, which evidence was to show him as a man unworthy of belief.

The general rule with reference to this method of impeaching or weakening the evidence of a witness on cross-examination is thus stated by the appellate court of this state:—

"As we have said above, a witness cannot be impeached, on cross-examination or otherwise, by proof of specific wrongful acts. The matter about which she was questioned was entirely foreign to the case, and was wholly immaterial, except to discredit the witness, and thereby break the force of her testimony." (*Sharon* v. *Sharon*, 79 Cal. 674.)

In *People* v. *Dye*, 75 Cal. 108, it was said: "A party cannot cross-examine his adversary's witness upon irrelevant matters, for the purpose of eliciting something to be contradicted. And if such matters are drawn out, the court should stop the inquiry there. It is well settled that a witness cannot be impeached by contradicting him upon collateral matters."

If this collateral matter showed the witness to be guilty of particular wrongful acts, it would certainly go very far to discredit his evidence, as being "a low specimen of humanity," and to permit it would be to proceed in a manner contrary to the first principles of justice. "Any other rule would destroy the law of evidence, and make trials interminable." (*People* v. *Dye*, 75 Cal. 108.)

The first exception to which our attention is directed by the appellant is to be found at folio 2953 of the transcript. The question put to the witness Alvarado was:—

"Will you look at the document which I have before referred you to concerning the Milpitas grant, and state whether that document does not purport to be executed

by you as constitutional governor of the department of the Californias?"

The question was objected to, on the ground that it sought to introduce a collateral matter, with a view to impeach the witness. Counsel for the plaintiffs insisted that he had the right to introduce the evidence to show that, as to important events of his life, Alvarado had no recollection at all, and that the Bocle grant was antedated.

It had been brought out in the examination in chief that Alvarado was acting governor and political chief in 1838, and that in 1839, about July, he became constitutional governor. He had shown great positiveness of recollection that he had actually signed the Bocle grant at the time, in 1838, it purported on its face to have been signed. Thus the accuracy of his recollection as to the material point in issue, viz., the date of the actual signing of the Bocle grant, became a matter of importance; and to test that, it was shown that as to the Milpitas grant, a larger and more important grant, which was made in May, 1839, before he became constitutional governor, he had no specially accurate remembrance.

This was proper, especially in view of the fact that his signing it as constitutional governor a short time before he actually became such was no proof that he acted wrongfully in so signing it, inasmuch as he had a right to make the grant as acting governor and political chief; and no effort was afterward made to contradict his statement as to when he made it; so that it came under neither of the alleged exceptions to the latitude of a proper cross-examination, either as proof of the commission of a special wrongful act, or as collateral matter brought out on cross-examination and then contradicted. And it was also competent to show the date of that signature with a view to its comparison with the signature to the Bocle grant, and thus perhaps to show the like-

ness or unlikeness of the two, made within about a year of each other.

Regarding the evidence objected to with reference to the Feliz grant, Alvarado's signature thereto was already in evidence and unobjected to; it then became important to show, if possible, there appearing to have been some change in his signature, what difference existed between the signature to that made some years after the Bocle grant, and the one of Alvarado affixed to this grant, in order to determine by comparison whether the Bocle grant was actually signed in 1838, or later, in 1848. The evidence, we think, was competent, too, in another point of view, and that was to test the accuracy of the memory of the witness, and to show, if possible, that he was mistaken as to the true date of the Bocle grant. And further, the explanation which Alvarado made as to the probable time when he made it as being in 1842, rather than in 1843, as it purports to be, tended to divest the transaction of any appearance of wrongfulness, and no effort was afterward made to contradict his statements on that point. The witness was further asked with reference to his making other grants, and answered that he made them, and that they were not antedated, but made at the time they were purported to have been made. This evidence was objected to as being collateral matter; in the language of the objection, it was "perfectly foreign to the case."

The court overruled the objection, and the witness stated that he had made certain grants to "the Sobrante," and to "Yerba Buena Island," in the bay in front of San Francisco, the Ortega grant being withdrawn. There was no effort made to show that at the time these grants purport to have been made that Alvarado, if he made them at that time, was not authorized to do so, so that no particular wrongful act is shown, nor was there any effort made to discredit him by showing that he did not make them at that date. So far as the record shows as

to these particular matters, there is nothing brought out which tends to impeach Alvarado. But it is argued that there are certain decisions of the United States supreme court, of which the trial court had knowledge, which tended to show that Alvarado, in making these grants, was guilty of turpitude. Be this as it may, it is not to be supposed that the trial court would have been influenced to disbelieve Alvarado through its knowledge of matters not in evidence in the particular case it was then trying. Since nothing was shown which tended to impeach the witness, the defendant was not prejudiced.

The fourteenth assignment of error upon which the defendant seems to rely is, that the court, against its objection, permitted R. C. Hopkins, a witness for the plaintiffs, "to testify, in rebuttal of the case made by the defendant, and for the purpose of impeaching the testimony of James Weeks, a witness for the defendant, that he, Hopkins, had examined the records and papers and Spanish archives in the office of the United States surveyor-general, whether he could find any grant of land ever made to James Weeks, and that upon such examination he found no grant of land to James Weeks."

The ground of the objection is, as stated, that "the whole question of a grant of land to James Weeks was a collateral matter brought out by plaintiff's counsel on his cross-examination of James Weeks; and Weeks's answers as to such collateral matter were not contradictable by plaintiffs in their rebutting evidence."

The record shows that Weeks was asked, on his examination in chief, if he had ever had any land granted to him. He stated that he had, in Santa Clara and Santa Cruz counties. He was then asked the name of his grant. His answer was, "I lived on the Potrero, in Santa Cruz." Afterward he was asked, "Did you get your grant of the Potrero previous to your building the mill on the Zayante Creek, or subsequently?" He answered,

"Afterward." Again, he was asked: "Whom did you sell that Potrero land of yours to?" Answer: "To Don Pedro Richards."

It does not appear that it was inquired of him what sort of a grant this was, but, as it seems to us, since he declared that he had a grant of this land, and sold it, that it was permissible to cross-examine him as to the matter, and then to show by another witness, as a circumstance tending at least to contradict him, that there was no trace of any such grant in the Mexican archives. And further, Weeks was put upon the stand by defendant to show, among other things, his familiarity with Mexican land grants, so as to strengthen the testimony he gave as to having seen and being capable of recognizing the title papers of the Bocle grant in 1841 or 1842, thus tending to negative the idea that it was made in 1848. Therefore any circumstance in rebuttal or cross-examination which went to show the improbability of such knowledge on his part was competent; and the evidence of Hopkins, that no such grant as Weeks claimed to have had appeared in the Mexican archives, tended to throw light upon the matter, and was material and competent.

By the fifteenth assignment of error, it is claimed that it was improper to allow the evidence given by Mr. Hopkins in rebuttal of the testimony of Weeks, and for the purpose of impeaching him, to the effect that the grant made to one Coppinger of a ranch called the Cañada del Raymondo was in the year 1841, and that Coppinger's petition for said grant was really dated in 1839. The ground of error relied on is, that the matter of the grant of land to Coppinger was collateral in its nature, and brought out on the cross-examination of Weeks, and that what he then stated was not subject to be contradicted by Hopkins.

The examination in chief of Weeks was evidently for the purpose of showing that he, as a Mexican alcalde's assistant, sometimes acting as constable, and at others

as clerk and interpreter, and himself the beneficiary of several grants of land, had special knowledge of such matters, and was likely to know and recognize the proper title papers appertaining thereto. Upon his cross-examination, this matter was gone into extensively in rebuttal of the claim of his special knowledge of such matters, as above stated, set up in the examination in chief, and the witness finally remembered that before he came to Santa Cruz to live, and consequently before he could have seen the Bocle grant, that he had seen one given to Coppinger by Alvarado, and that it was in 1836 or 1837. Afterward, as we have seen, Mr. Hopkins was called by the plaintiffs, and stated that the Coppinger grant was not made in 1836 or 1837, but in 1841.

It was competent, as it seems to us, on cross-examination, to determine, if possible, how much, if any, of such knowledge Weeks did actually possess, as a circumstance tending to throw light upon the question as to whether or not he knew what Bocle's title papers amounted to, which papers he claims to have seen in 1841 or 1842; for if he had seen them signed by Alvarado in 1841 or 1842, then they could not have been antedated in 1848. But if he had no such special knowledge as was attempted to be shown on his examination in chief, then he probably was mistaken as to what Bocle's title papers were, if he saw them at all in 1841 or 1842. They may have been the alcalde grant, which is admitted to have been made in 1838. Thus the cross-examination was in rebuttal of that in chief, and the whole of the testimony was that of the defendant, and the plaintiffs could contradict it.

The sixteenth assignment of error is to the effect that it was improper for the court to allow Mr. Hopkins, as a witness in rebuttal, and to impeach the testimony of Joaquin Escamillo, the scribe who testified that he wrote the Bocle petition at Monterey on the 3d of February, 1838, to testify as to the date of a certain grant made to

his brother, Blas Escamillo, on the 6th of June, 1846. And the same ground of objection was made as that just discussed. The witness, when examined in chief, had stated very positively the date of the Bocle grant to have been in 1838, and to show that his recollection of other matters occurring at, about, or after this was not so accurate would tend to determine whether his memory of the true date of the Bocle grant was reliable or not, and therefore it was competent to show on cross-examination that he had seen Bocle at Santa Cruz at a time when he, the witness, was on his way to visit his brother, Blas Escamillo, at the rancho El Refugio, concerning the date of the grant to which Hopkins testified, as also the fact that such a grant had been made to his brother, and that the witness had gone there to see him; it was also proper, in this same view, to bring out the fact on cross-examination that the witness remembered he had gone there before he had written the Bocle petition. And then, if the defendant could contradict these matters of recollection by showing that the grant to Blas Escamillo was not made until 1846, it would tend to show the inaccuracy of the recollection of the witness as to the true date of the Bocle grant. For if it was probable that the witness would not visit his brother until after the making of the grant in 1846, then the witness would be mistaken in his recollection that he met Bocle before 1838, and hence that evidence would tend to show that this meeting could not have been before 1838, but after 1846, and about 1848, when the plaintiffs claimed the true date to be. So that the cross-examination being proper, the whole evidence was that of the defendant, and the plaintiffs had a right to contradict it if it could be done.

It follows that the evidence objected to was proper; that it tends to support the finding that the Bocle grant was antedated; and we advise that the judgment and order denying a new trial be affirmed.

GIBSON, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order denying a new trial are affirmed.

Rehearing denied.