[Civ. No. 2453. Third Appellate District.—October 13, 1922.]

## K. KHAN, Respondent, v. ABE ZEMANSKY et al., Appellants.

[1] CONVERSION—ISSUES—EVIDENCE—FINDINGS.—Where the complaint in an action to recover possession of a diamond ring or the value thereof in case delivery cannot be had alleges that the defendants, a storekeeper and one of his salesmen, came into possession of the ring and retained possession thereof, and the answer of the defendants admits they came into possession of plaintiff's ring, but alleges that it was returned to plaintiff by the defendant storekeeper, the only issue to be tried is whether the ring was returned, and if there is ample testimony to support the finding of the jury that the ring was not returned, the judgment against the defendant salesman cannot be disturbed for want of evidence to support it.

[2] ID. — IMPEACHMENT — IMMATERIAL MATTERS. — In such action, plaintiff and his wife both having testified on cross-examination that they were married in a certain state, the court properly refused to permit the latter to be impeached by showing that in a trial between other parties she had testified that she and the plaintiff were married in this state. A witness cannot be impeached on immaterial matters.

[3] ID. — DELIVERY OF RING — TIME — IMPEACHMENT.—A witness for the defense having testified that he was in the defendants' store on a certain date and that he saw the defendant storekeeper deliver a diamond ring to the plaintiff, and he having fixed that date by reference to a sale of oil stock made on that day to one of said defendant storekeeper's employees, the testimony of said employee that he made but one purchase of oil stock from said witness and, he having produced the check given in payment therefor, which check bore a date about two months subsequent to that on which defendant storekeeper's witness had stated he was in said defendant's store, that he thought the check was dated the day of the purchase, was admissible, in rebuttal, as tending in some degree to discredit the testimony of said witness for the defense that he was in said defendant's store on the date testified to by him.

[4] ID.—BURDEN OF PROOF—INSTRUCTIONS.—The court having fully and correctly instructed the jury as to the burden of proof, the defendants were not prejudiced by the court's refusal to further instruct the jury that the "burden is upon the plaintiff to prove his case to a moral certainty; that is, by that degree of proof which ordinarily produces conviction in an unprejudiced mind."

[5] ID. — REPUTATION OF PLAINTIFF — IMPEACHMENT — INSUFFICIENT KNOWLEDGE.—Notwithstanding the witness produced by the de-

fendants for the purpose of impeaching the plaintiff as a witness testified that he knew plaintiff's "reputation in the community in which he lives for truth, honesty, and integrity," and that it was bad, on cross-examination the witness having testified that he did not know where plaintiff lived, and never did know where he lived, on motion of counsel for plaintiff his testimony was properly stricken out.

[6] ID.—"GENERAL" REPUTATION — INCOMPETENT TESTIMONY. — Where a witness produced by the defendants for the purpose of impeaching the plaintiff as a witness is not asked if he knows the general reputation of the plaintiff for truth, honesty, and integrity, the word "general" being omitted from all questions upon the subject, the objection that the testimony thus sought to be elicited is incompetent should be sustained.

[7] ID.—SUFFICIENCY OF FOUNDATION—DISCRETION OF TRIAL COURT.— The question as to whether a sufficient foundation has been laid to warrant a witness in expressing an opinion as to the general reputation of another for truth, honesty, and integrity is a matter especially committed to the judgment of the trial court, and unless that discretion is shown to have been clearly abused, there can be no prejudicial error. It is not an abuse of discretion to require something more than merely that the impeaching witness knows the other's place of business and his reputation in the vicinity of such place.

APPEAL from a judgment of the Superior Court of Sacramento County. C. O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin and C. P. McLaughlin for Appellants.

John R. Connelly and J. F. Gaffney for Respondent.

FINCH, P. J.—Plaintiff was given judgment against both defendants for the possession of a diamond ring or the value thereof in case delivery could not be made.

[1] It is contended "that there is no basis for the judgment against defendant Perky. The evidence shows without dispute that he was a salesman in the store of defendant Zemansky." The complaint alleges that the defendants came into possession of the ring and retained possession thereof. The answer alleges "that on or about the tenth day of March, 1920, said plaintiff left with said defendants a diamond ring, which was the only diamond ring claimed, or

in the possession of plaintiff, of which defendants or either of them ever had possession, to be sold by defendants . . . and said diamond ring was, on or about the nineteenth day of March, 1920, by said defendant, Abe Zemansky, given and returned to the possession of said plaintiff.'' It is thus plain that the only issue to be tried was whether the ring had been returned. The evidence bearing on this issue was sharply conflicting. There was ample evidence, if believed, to support the implied finding of the jury that the ring had not been returned. Since the answer admits that both defendants received the ring, the judgment against Perky cannot be disturbed for want of evidence to support it.

[2] The plaintiff is a Hindu. His wife is a white woman. Both testified at the trial. Both testified that they were husband and wife. On cross-examination both testified that they were married in Helena, Montana. The court sustained objections to questions as to the time of the marriage and refused to permit the defendants to impeach Mrs. Khan by showing that in a trial between other parties she had testified that she and the plaintiff were married in California. The time or place of marriage was wholly immaterial to any issue in the case. It is settled that a witness cannot be impeached on immaterial matters. Further, Mrs. Khan was not asked whether she had made the alleged inconsistent statement and, hence, there was no foundation for the impeaching question. (Code Civ. Proc., sec. 2052.)

[3] E. C. Turney was sworn as a witness for defendants and testified that he was in Zemansky's store March 19, 1920, and there saw Zemansky deliver a diamond ring to plaintiff. He fixed the date by a sale of oil stock he made in the store on that day to one of Zemansky's employees. On cross-examination, Turney said he thought that he had sold some oil stock to W. W. McFall on the same day. In rebuttal, counsel for plaintiff called McFall as a witness, who testified that he made but one purchase of oil stock from Turney and produced the check given in payment therefor, dated May 10, 1920. He further stated that he thought the check was dated the day of the purchase, but could not say positively that such was the fact. Since Turney had fixed the time at which he saw the ring delivered to plaintiff by reference to a sale of oil stock made on that day and stated on cross-examination that he thought he had made a sale of stock

to McFall on the same day, the testimony given by McFall was admissible as tending in some degree to discredit Turney's statement that he was in Zemansky's store March 19th (Code Civ. Proc., sec. 1868; *Davis* v. *California Powder Works,* 84 Cal. 617 [24 Pac. 387]; Wigmore on Evidence, sec. 1005 [f]). Even if the admission of such testimony were error, "an examination of the entire cause, including the evidence," does not show "that the error complained of has resulted in a miscarriage of justice." (Const., art. VI, sec. 4½.)

[4] The court refused to instruct the jury as follows: "The burden is upon the plaintiff to prove his case to a moral certainty; that is by that degree of proof which ordinarily produces conviction in an unprejudiced mind." The court instructed the jury "that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence each of the material allegations in the complaint not admitted by the answer. . . . That by a preponderance of evidence is meant that evidence which, after a consideration of all the evidence, is, in the judgment of the jury, entitled to the greatest weight; that testimony which points to a certain conclusion appears to be more credible and probable than the testimony to the contrary, that is more convincing. It does not mean necessarily a greater number of witnesses, but only such evidence that satisfies an unprejudiced mind of the truth of the allegations to be established by the party upon whom rests the burden of proof." The instructions given fully and correctly state the law as to burden of proof and it follows that the defendants were not prejudiced by the refusal to give the proposed instruction.

The court struck out the testimony of two character witnesses produced by the defendants for the purpose of impeaching the plaintiff as a witness. [5] T. N. Koenig, a police officer for twenty years and having charge of the detective bureau at the time of the trial, testified that he knew plaintiff's "reputation in the community in which he lives for truth, honesty, and integrity" and that it is bad. On cross-examination, the witness testified: "I know his business; I do not know where he lives, never did know where he lives." On motion of counsel for plaintiff his testimony was stricken out. Manifestly this was not error. Martin A. Pennish, a retired police officer, who had retired

eighteen months before the trial, testified that he had known the plaintiff for several years around the lower end of town; that he did not know where plaintiff lived, but knew where he was doing business in November, 1919, "before he moved out"; that witness "knew he was here during that time." Counsel for defendants then propounded the following question: "I will ask you if you know his reputation for truth, honesty, and integrity in the city of Sacramento?" On objection by counsel for plaintiff, the witness was further interrogated and testified that plaintiff "was living here off and on during that time." He was then asked: "Do you know his reputation?" Counsel for plaintiff objected: "We renew the objection on the ground as irrelevant, immaterial and incompetent, he does not know where—" The witness then further testified that plaintiff's residence must have been in Sacramento "or he would not have been here." The court overruled the objection and the witness answered that plaintiff's reputation is bad. On cross-examination the witness testified that he did not know where plaintiff resided since November, 1919; that witness "never knew where he resided." The court thereupon struck out the testimony of the witness. [6] The witness was not asked if he knew the *general reputation* of the plaintiff for truth, honesty, and integrity, the word "general" being omitted from all questions upon the subject. The objection that the testimony thus sought to be elicited was incompetent should have been sustained and it was not error for the court to strike it out. (*People* v. *Markham,* 64 Cal. 157, 163 [49 Am. Rep. 700, 30 Pac. 620]; *People* v. *Cord,* 157 Cal. 562, 571 [108 Pac. 511]; *Tesse* v. *Huntingdon,* 23 How. 2 [16 L. Ed. 479, sec, also, Rose's U. S. Notes].) The evidence of the witness, considered alone or in connection with the other evidence in the case, was such as to justify the conclusion that he did not know the general reputation of the plaintiff in the *neighborhood in which he resided.* Some authorities hold that proof of general reputation is not necessarily limited to the neighborhood of the residence of the witness sought to be impeached. In Wigmore on Evidence, section 1616, it is said: "The traditional phrase about 'neighborhood' reputation was appropriate to the conditions of the time; but it should not be taken as imposing arbitrary limitations not appropriate in other times. *Alia tempora, allii*

*mores.* What the law then and now desired was a trustworthy reputation; if that is to be found among a circle of persons other than the circle of neighbors about a sleeping-place, it should be received.'' The evidence here does not show the length of time the plaintiff was engaged in the restaurant business, or whether the witness' knowledge of his reputation was acquired from those with whom the plaintiff usually associated or came in contact, or whether it was a reputation among the police officers only, as in the case of *People* v. *Markham, supra.* The reason for limiting such proof to the neighborhood of one's residence is that he there usually spends most of his time and most frequently comes into social and business contact with others. If the rule is to be extended to permit proof of one's reputation in business circles, the party offering such proof may reasonably be required to show the opportunities in such circles of forming a correct estimate of the character of the witness sought to be impeached. [7] It is not an abuse of discretion to require something more than merely that the impeaching witness knows the other's place of business and his reputation in the vicinity of such place. ''The question as to whether a sufficient foundation has been laid to warrant a witness in expressing such an opinion is a matter especially committed to the judgment of the trial court, and unless that discretion is shown to have been clearly abused, there can be no prejudicial error.'' (*People* v. *Love,* 29 Cal. App. 521, 525 [157 Pac. 9, 11].) It cannot be said that the court abused its discretion in striking out the testimony of the impeaching witnesses.

The judgment is affirmed.

Anderson, J., *pro tem.*, and Burnett, J., concurred.