Filed 3/19/25  P. v. Cosby CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYLER PAULROBERT COSBY,<br><br>    Defendant and Appellant. | D083014<br><br><br><br>(Super. Ct. No. SCD288341) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

Tyler Paulrobert Cosby was found guilty of first degree murder after a trial in which he contended that he killed the victim in self-defense.  Cosby appeals the judgment, arguing that the court erred by excluding evidence of a police-created flyer regarding the murder victim which he argues would show

the victim's reputation for violence. As we discuss *post*, the trial court properly excluded the flyer. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *The Charges*

Cosby was charged in an amended information with the murder of Samuel Burkhalter and the personal use of a firearm and intentional and personal discharge of a firearm, causing great bodily injury and death (count 1); possession for sale of fentanyl (count 3); possession for sale of methamphetamine (count 4); and possession of methamphetamine while in possession of a loaded, operable firearm (count 5). A codefendant, Selina Elaina Singleton, was charged with being an accessory after the fact (count 2) and with the drug possession charges (counts 3, 4 and 5).

Shortly before trial, Cosby pled guilty to counts 3, 4 and 5, and proceeded to trial on count 1 as the sole defendant.

B. *Motions in Limine*

Prior to trial, Cosby moved in limine to introduce evidence of Burkhalter's prior specific bad acts "to confirm Mr. Cosby's assertion that Mr. Burkhalter was known to be armed with guns and was the aggressor." The motion noted that Cosby did not "dispute that [he] used a firearm and shot Mr. Burkhalter." Specifically, Cosby sought to introduce a one-page police

bulletin (flyer or police flyer)[1] regarding Burkhalter that had been created by the Carlsbad Police Department and circulated to law enforcement approximately two months before the shooting. Cosby offered the police flyer to show "how dangerous Mr. Burkhalter was" and to bolster Cosby's "claim of self-defense that Mr. Burkhalter was the aggressor." At the hearing on the motion, defense counsel explained, "It is our intent to introduce this flier [*sic*] as evidence of Mr. Burkhalter's prior access to firearms as part of the [Evidence Code section] 1103[2] evidence, as well as Mr. Cosby's testimony. He did see Mr. Burkhalter with firearms." Cosby argued that the flyer proved that Burkhalter was known to carry firearms "and was also the

---

[1] The flyer (sometimes inaccurately described as a "Be On The Lookout" or "BOLO" flyer) was entitled "Officer Safety" with a subtitle "Status: Armed Prohibited Due to Mental Health." It contained a photograph above the name Samuel John BURKHALTER, and stated a date of birth, weight, hair and eye color, and a driver's license number. It stated his last known address in Carlsbad and stated "Transient – last arrest by LMPD 9/20/20." It contained the following text: "Sometime between 10/11/20 – 10/12/20, Samuel BURKHALTER (9/17/83) entered his deceased parents' residence at 1294 Cynthia Ln, Carlsbad and removed two rifles and a handgun. Burkhalter is a transient and is possibly staying somewhere in Vista. According to his sister and ex-wife, he is a drug abuser and has mental health issues. He has an entry in the Armed Prohibited Persons System (APPS) with an expiration of 5/10/25, citing mental health as the reason. Burkhalter was last arrested in La Mesa on 9/20/20 for HS and he was driving a rented U-Haul van which was impounded. If Burkhalter is contacted in possession of the firearms, please notify CBPD Dispatch to have an officer collect the firearms as evidence for 459 PC. This bulletin is for officer safety information." The flyer was attributed to the Carlsbad Police Department Crime Analysis Unit and contained the name and contact information for a Senior Crime Analyst.

[2] Further statutory references are to the Evidence Code.

3

aggressor," and the flyer "went to Cosby's state of mind in fearing for his life at the time of the shooting."

The prosecutor explained that the police flyer was created after Burkhalter removed guns from the home of his deceased parents.

The court denied the motion in limine, noting that the flyer was "multiple layers of hearsay" and did not describe a violent act. "It does not say that this man committed a violent attack against anyone. That's the issue, right?" The court concluded that Cosby could testify that he had seen Burkhalter with firearms on earlier occasions, but the court refused to admit the flyer. When defense counsel stated that she planned to call the officer who created the flyer to explain why officers thought Burkhalter was armed and dangerous, the court further noted an issue under section 352, i.e., that the evidence would generate a "mini trial" on the circumstances of the creation of the flyer.

During the trial, Cosby's counsel revisited the issue of the flyer, telling the court that it could be redacted to eliminate the reference to mental health. The court stated, "You're free to call ten witnesses if you wish that say[], I was in his presence when he had guns, and he carried them. Your client, he can testify to that, obviously can say that. I'm not prohibiting that. I'm just saying a hearsay Be-On-The-Lookout flier without any other information about it is too many levels of hearsay for this Court to allow it to come in."

C. *Trial*

At trial, Cosby testified that Burkhalter "typically was armed when I would meet him . . . being in the drug-selling business," and that Burkhalter had told others that he planned to kill Cosby in retaliation for Cosby cutting Burkhalter out of a drug deal. Cosby further testified that immediately

4

before the shooting, Burkhalter told him that he was going to kill Cosby. Cosby testified that he shot Burkhalter because he was fearful for his life. Burkhalter did not have a weapon with him when he was shot. After the shooting, Cosby texted the message "It's done" to two of his friends. Cosby's defense counsel did not call any other witnesses.

D.     *Verdict and Sentence*

The jury found Cosby guilty of first degree murder and found true the allegations that Cosby "intentionally and personally discharged . . . a handgun, and proximately caused great bodily injury and death" to the victim (Pen. Code, § 12022.53, subd. (d)) and personally used a handgun (Pen. Code, § 12022.5, subd. (d)). The trial court sentenced Cosby to state prison for twenty-five years to life and ten additional years for the gun enhancement as to the murder conviction, plus three years for counts 3, 4 and 5. Cosby timely appealed.

## II.     DISCUSSION

Cosby argues that the trial court abused its discretion in excluding the police flyer because the issue at trial was whether Cosby shot and killed Burkhalter in actual or perceived self-defense, and the flyer would show that the victim had a reputation for violence to buttress Cosby's testimony that he reasonably believed he was in imminent danger from Burkhalter.

We review evidentiary rulings involving character evidence for abuse of discretion. (See *People v. Doolin* (2009) 45 Cal.4th 390, 437).

We note that the Cosby's arguments regarding the purpose of the flyer have changed over time. As noted above, during the trial, Cosby argued that the flyer showed that Burkhalter was known to carry firearms so he could have been armed and that he was the aggressor. On appeal, Cosby takes a somewhat different tack, arguing that the flyer would show that Burkhalter

5

had a reputation for violence; that the flyer represented the police opinion that Burkhalter was armed and dangerous; and that the flyer would show "the reputation opinion of police that [Burkhalter] was armed and dangerous."

Section 1103 provides in relevant part that in a criminal case, evidence of the victim's character in the form of evidence of opinion or reputation or evidence of specific instances of conduct may be admissible if offered by the defendant to prove conduct of the victim in conformity with the character trait.

Cosby is generally correct in his assertion that the character of the victim is admissible in support of his claim of self-defense.  (See, e.g. *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732 [where defense is self-defense and imperfect self-defense, evidence as to defendant's actual belief in the need to use lethal force to defend himself and the reasonableness of that belief was relevant and admissible]; see also *People v. Minifie* (1996) 13 Cal.4th 1055, 1065 [in an effort to prove self-defense, the defendant may present evidence to establish the reasonableness of his fear in order " 'to "prove his own frame of mind" ' "].)

In this case, the trial court recognized the relevance of such evidence, and the court repeatedly stated that the defense could present such evidence. For example, in considering the motion in limine, the court stated, "We already talked about your client testifying he had seen [Burkhalter] with firearms.  That's fine, or any violent conduct between the two of them that he can testify about, of course that all comes in."  When defense counsel raised the issue of the flyer again during trial, the court stated, "You're free to call ten witnesses if you wish that say[ ], I was in his presence when he had guns, and he carried them.  Your client, he can testify to that, obviously can say

that. I'm not prohibiting that." The court reiterated, "The defense could call any witness you wish on this issue of defendant/victim's reputation for violence. If you wish to call, for example, victim's sister to say he was violent and carried guns around the house, anything of that nature would be admissible, under the case law, as well."

But the relevance of Burkhalter's character does not mean that *any* evidence offered by the defense as to Burkhalter was admissible. As noted by the trial court, the flyer was problematic for many reasons.

First, as the defense implicitly conceded when it offered a redaction, the flyer contained irrelevant details about Burkhalter's mental health issues and a reference to a firearms prohibition related to those mental health issues. The flyer also stated that Burkhalter was a transient and a drug abuser who had recently been arrested on drug charges. Those details did not point to dangerousness and were therefore irrelevant to Cosby's asserted need to defend himself against Burkhalter.

Second, although the heading of the flyer is entitled "Officer Safety" and the last statement in the flyer notes that "[t]his bulletin is for officer safety information," as the trial court aptly noted, the flyer nowhere states that Burkhalter had acted violently or was known to be violent. It provided no "evidence of specific instances of conduct" that might have been admissible under section 1103 to prove his character for violence. Further, the flyer contained no assertion that Burkhalter was considered to be "armed and dangerous", nor did it state that law enforcement believed him to be dangerous. It states that he is transient; that he was recently arrested for HS (presumably a drug offense); that he is a drug abuser; and that he has mental health issues. The flyer notes that "[i]f Burkhalter is contacted in possession of the firearms, please notify CBPD Dispatch to have an officer

7

*collect the firearms as evidence* for 459 PC [burglary]." Nowhere does it state that the Carlsbad Police Department considered Burkhalter to be both armed and dangerous.

Thus, fairly read, the sole relevance of the flyer was the information that Burkhalter was in possession of two rifles and a handgun. This information was relevant, because it would have reinforced Cosby's testimony that Burkhalter could have been armed and that Cosby's fear of him was reasonable. As argued by Cosby's counsel in seeking its admission, "We're seeking to introduce [that] Mr. Burkhalter was known to carry weapons, which bolsters Mr. Cosby's belief that on the day in question, Burkhalter could have been armed and his life was in imminent danger."

The source of the information that Burkhalter was in possession of weapons cannot be discerned from the flyer, but from its context, it appears the police department received the information from Burkhalter's sister or his ex-wife, both of whom were named in the flyer. Thus, the information was hearsay, as the trial court correctly noted.

Cosby counters that section 1324 provides that the hearsay rule does not preclude admission of a person's general reputation. However, the fact that Burkhalter was said to have weapons available to him is different from whether he had a reputation for possessing weapons.

Cosby further argues that the flyer was admissible under an exception to the hearsay rule, namely section 1280[3], as an official record. However,

_____

[3]  Section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies:  [¶] (a) The writing was made by and within the scope of duty of a public employee.  [¶] (b) The writing was made at or near the time of the act, condition, or event.  [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

where the source of the hearsay statement is not a public employee, the trustworthiness element of section 1280 cannot be met.  (See, e.g., *People v. Baeske* (1976) 58 Cal.App.3d 775, 779–781 [police report of a telephone call from victim's neighbor was untrustworthy and therefore inadmissible under section 1280 where the relevant information was provided by a private citizen, not a public employee who had a duty to observe correctly or report accurately]; *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206 [police records of 911 calls were not admissible as official records because the people who made the calls to 911 "had no duty to correctly observe and report facts"].)  Thus, the trial court did not abuse its discretion in finding that the flyer did not constitute evidence of specific acts of violence that could support a claim that Burkhalter was the aggressor in the shooting, nor in finding that the flyer constituted hearsay as to the information that Burkhalter was in possession of weapons.

On appeal, Cosby now argues that the flyer should have been admitted as "opinion of reputation" evidence.  Specifically, he contends that the flyer represented the police's opinion that the victim was armed and dangerous or, put another way, the flyer would show "the reputation opinion of police that he was armed and dangerous."

We reject this contention.  As discussed above, the flyer nowhere states that Burkhalter is considered to be "armed and dangerous."  The flyer in no way establishes that Burkhalter had a "reputation" within the Carlsbad Police Department or that the department had formed an "opinion" that Burkhalter was dangerous.  Even if we were to consider that a police department could constitute the kind of "community" contemplated in the context of reputation testimony, Cosby failed to provide a foundation to establish that the police had any view about Burkhalter's reputation in the

9

community beyond the information that had been received from the sister and the ex-wife. (See, e.g., *Khan v. Zemansky* (1922) 59 Cal.App. 324, 329 [court does not abuse its discretion in excluding reputation testimony where no foundation is laid to show "the opportunities" for the witness to form "a correct estimate of the character" of the subject of the reputation evidence].) Accordingly, the trial court did not abuse its discretion in excluding the flyer.[4]

## III.   DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.

---

[4]     Because we conclude that the flyer was inadmissible hearsay, we do not reach the trial court's further concerns as to section 352.